UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:23-cv-352

NATALIE FERRETTI,

    Plaintiff,

v.

TRUIST FINANCIAL CORPORATION,

    Defendant.

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Natalie Ferretti ("Plaintiff" or "Ms. Ferretti") brings this action for violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.* and North Carolina public policy.[1]

## PARTIES

1. Ms. Ferretti is a resident of Charlotte, North Carolina.

2. Defendant Truist Financial Corporation (hereinafter "Truist"), is a North Carolina corporation, registered to do business in North Carolina, with its principal office located at 214 N Tryon Street, Charlotte, North Carolina.

3. Defendant employed Ms. Ferretti during the events giving rise to this action.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction under 28 U.S.C. § 1331 over Plaintiff's claims under FMLA because the claims arise under the laws of the United States.

---

[1] Ms. Ferretti intends to amend her complaint and add her claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.§ 2000e, *et seq.*, following receipt of a Notice of Right to Sue from the EEOC.

5. This Court has personal jurisdiction over Defendant because Defendant's principal place of business is in Charlotte, North Carolina, which is located within this judicial district.

6. At all relevant times, Defendant was, and is, an "employer" within the definition of FMLA, 29 U.S.C. § 2611(4)(A) on the basis that it employs more than 50 employees.

7. At all relevant times, Plaintiff was an "eligible employee" within the definition of FMLA, 29 U.S.C. § 2611(2)(A), on the basis that Defendant employed Plaintiff for at least 12 months, and Plaintiff performed at least 1,250 hours of service for Defendant.

8. At all times relevant, Plaintiff was an "employee" covered by the protections of Title VII of the Civil Rights Act of 1964 within the meaning of 42 U.S.C. § 2000e(f).

9. At all relevant times, Defendant was, and is, an "employer" within the definition of Title VII, 42 U.S.C. § 2000e, *et seq.* (specifically, 42 U.S.C. § 2000e(b)) on the basis that it employs more than 15 employees.

10. At all times relevant to this action, Defendant possessed and exercised the power and authority to direct, control and supervise the work performed by Ms. Ferretti.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Plaintiff was hired to work in this district and Defendant conducts business in this district.

## ADMINISTRATIVE EXHAUSTION

12. Plaintiff intends to file a Charge of Discrimination against Defendant with the United States Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on sex, pregnancy, and retaliation. Upon proper administrative exhaustion, Ms. Ferretti intends to amend her Complaint.

# GENERAL ALLEGATIONS

14. On or about January 1, 2021, Ms. Ferretti began working for Truist in the position of Advice & Planning Strategic Consultant III.

15. At all relevant times, Ms. Ferretti was employed full-time by Truist and worked at least forty (40) hours per week.

16. Ms. Ferretti received paychecks for her work performed for Truist.

17. In February of 2022, Ms. Ferretti had her annual performance review for the year 2021 with her previous manager, Helene Moll. Her review contained a rating description that Ms. Ferretti's "[p]erformance frequently exceeds expectations" and that she "[c]ompletes complex and challenging work, often going beyond anticipated behaviors and results, making a substantial and positive contribution to the team, organization, and culture." Ms. Ferretti received a generous bonus as a result.

18. On December 2, 2022, Ms. Ferretti was notified by her manager, Kristin Beard, that she would receive a pay raise effective January 1, 2023.

19. On January 31, 2023, Ms. Ferretti attended an in-person work meeting in uptown Charlotte (her supervisor Craig Cascio and manager Kristin Beard were in attendance, among others). Ms. Ferretti was visibly pregnant as evidenced by a colleague's rhetorical comment, "Do you have any news to share?" Later that same colleague said that Ms. Ferretti "obviously looked pregnant."

20. On February 6, 2023, Ms. Ferretti officially informed Truist's Human Resources Department and Ms. Beard that she was pregnant.

21. The next day, on February 7, 2023, Human Resources approved Ms. Ferretti's request for FMLA leave for a total of 12 weeks via email on which Ms. Beard was also copied.

22. On February 16, 2023, Ms. Ferretti had her bi-weekly one-on-one call with her superior, Craig Cascio, during which he mentioned future project needs from her.

23. Five days later, on February 21, 2023, Ms. Beard informed Ms. Ferretti that her position was being eliminated due to "cost cuts." Ms. Ferretti asked if her termination was due to her work performance or pregnancy. Ms. Beard denied that either of those were the reason for her termination, and informed Ms. Ferretti she was no longer eligible for FMLA leave.

24. Ms. Ferretti's scheduled termination date was March 31, 2023.

25. On February 21, 2023, Ms. Ferretti received a proposed severance package from Truist that included severance pay of $58,760.75 for a period of 25 weeks. The severance agreement included a description of Ms. Ferretti's position as "Advice & Planning Consultant III responsible for merger related strategy and execution project work" which did not accurately describe her work duties while employed in such position. Ms. Ferretti did not sign the severance agreement as she does not agree with the terms.

26. On February 24, 2023, Ms. Ferretti had her annual performance review for the year 2022. She had another excellent performance review that also referenced future project needs. The reference to future project needs did not align with Truist's recent decision to eliminate Ms. Ferretti's position. The review also contained nothing about Ms. Ferretti performing merger related work.

27. On March 7, 2023, Ms. Ferretti sent an email to Brooks Hoffman from Human Resources asking why she was being terminated and why she was the only individual terminated within the Decisional Unit, despite her five teammates having the same titles and job descriptions. Ms. Ferretti stated to Ms. Hoffman that she was surprised to see that her position was described on the severance agreement as being "responsible for merger related strategy and execution project

work" as that was not an accurate description of the duties of her position. Additionally, none of her performance reviews mention merger related work. This "merger related work" description appears to be an afterthought by Truist to use as a pretext for terminating Ms. Ferretti's employment.

28. On March 10, 2023, Ms. Ferretti spoke with her superior Craig Cascio who confirmed that all six job descriptions for Ms. Ferretti's position and her five teammates' positions are the same. However, Ms. Ferretti was the only one whose position was eliminated. Mr. Cascio refused to answer Ms. Ferretti's questions about a timeline for such decision, who was involved, and when the final decision was made to terminate her employment.

29. Following being informed her position was the only one being eliminated and in order to remain employed, Ms. Ferretti applied for several open positions at Truist for which she was well qualified. In mid-March of 2023, Ms. Ferretti was rejected for one of these positions at Truist for which she had applied.

30. On March 23, 2023, she had a screening call with a Truist recruiter, Erin Bell, for a project-oriented position. Ms. Bell stated that they were going to be conducting interviews within the "next week or so" and that the hiring manager Caroline Burdo "really needs the help." Ms. Ferretti was confident that she would soon be scheduled for an interview. However, after following up with Ms. Bell, Ms. Ferretti was informed two weeks later on April 4, 2023 that Truist had placed a hiring hold on that position. This was despite Ms. Ferretti previously being told by Ms. Bell that the hiring manager Ms. Burdo "really needs the help." The prior day, on April 3, 2023, Ms. Ferretti was again turned down for another Truist position (Business Connect Advisor II) for which she applied.

31. Even as late as April 18, 2023, Ms. Ferretti has been rejected for yet another position (Business Connect Advisor II), again without a single interview by Truist. It appears that not only was she terminated as a result of her pregnancy but that she is also being retaliated against repeatedly by being rejected for positions for which she is more than qualified.

32. Markedly, on Ms. Ferretti's termination date, March 31, 2023, Ms. Ferretti discovered on Truist's internal employment website that a new position was available within Ms. Ferretti's former team under Ms. Beard. The job was posted on the same date as Ms. Ferretti's termination date; the same day that she would lose access to the internal postings. The position described the same job title, job description, and pay grade of Ms. Ferretti's former position and the positions of her five teammates. Thus, it appears her "position elimination" was a rouse simply to oust her because she is pregnant and sought FMLA leave.

33. Truist knew Ms. Ferretti was entitled to receive FMLA leave and had interfered with her ability to do so.

34. Truist failed to provide Ms. Ferretti with notice of her eligibility and rights as required by the FMLA, including the individualized notice of her job protection rights.

35. Immediately following Ms. Ferretti's FMLA leave notification, Ms. Ferretti faced retaliation from Truist wherein her employment was terminated within approximately two weeks after providing such FMLA leave notice.

36. Defendant interfered with Ms. Ferretti's FMLA rights by failing to provide her with notice that she was entitled to said FMLA leave based on the qualifying event of which Truist was well aware.

37. Ms. Ferretti clearly communicated to Truist that she wanted to return to work after her pregnancy was over. This is documented by communications between Ms. Ferretti and Truist.

6

Case 3:23-cv-00352-MOC-SCR   Document 1   Filed 06/13/23   Page 6 of 9

38. Ms. Ferretti therefore believes and avers that Truist discriminated against her and terminated her employment due to her sex, being pregnant, and requesting FMLA leave.

## COUNT I

### Violation of FMLA – Interference with FMLA Rights

39. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

40. Defendant was well aware that Ms. Ferretti had suffered a qualifying event under FMLA.

41. Defendant prevented Ms. Ferretti from taking her lawfully permitted FMLA leave under 29 U.S.C. § 2612(a)(1)(D) due to her being pregnant.

42. Defendant retaliated against Ms. Ferretti for taking her lawfully permitted FMLA leave under 29 U.S.C. § 2612(a)(1)(D) due to her being pregnant.

43. Defendant denied, interfered with, and restrained Ms. Ferretti from the lawful exercise of her substantive rights provided under the FMLA including, but not limited to, failing to provide the required individual FMLA notices to her and thereby preventing her from making informed decisions about her leave.

44. Ms. Ferretti was automatically prejudiced by the lack of required individualized notice. She was further prejudiced because her job was not held open for her as required by the FMLA and she was terminated within approximately two weeks of requesting FMLA leave. Plaintiff has thus suffered damages because of Defendant's unlawful conduct.

45. Defendant's violation of the FMLA, 29 U.S.C. § 2615(a)(1), by interfering with Ms. Ferretti's lawful exercise of his rights under FMLA, was willful and/or lacking of good faith

7

Case 3:23-cv-00352-MOC-SCR   Document 1   Filed 06/13/23   Page 7 of 9

## COUNT III

### Wrongful Discharge in Violation of Public Policy

46. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

47. Defendant employed at least fifteen (15) employees at all relevant times.

48. Defendant violated the public policy of North Carolina as set forth in N.C.G.S. § 143-422.1, et seq. by terminating Plaintiff because of Plaintiff's sex and pregnancy.

49. As an actual, proximate, and foreseeable consequence of Defendant's conduct, Plaintiff has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

50. Defendant's actions were done maliciously, willfully or wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages in an amount to be determined at trial.

51. Defendant's officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief:

1. An Order awarding Plaintiff damages for Defendants' violation of the Family Medical Leave Act, including backpay, lost wages, employment benefits, liquidated damages and any other compensation denied or lost because of Defendant's violation of the FMLA;

2. An Order awarding Plaintiff compensatory damages for emotional distress, pain and suffering, inconvenience, and/or mental anguish in an amount to be proven at trial;

3. An Order awarding Plaintiff punitive damages under N.C. Gen. Stat. § 1D-115 in an amount to be proven at trial;

4. An Order awarding Plaintiff the costs of this action;

5. An Order awarding Plaintiff reasonable attorneys' fees;

6. An Order awarding Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law; and

7. An Order granting any other necessary or appropriate relief to which Plaintiff is entitled under the law.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury.

*/s/ L. Michelle Gessner*
L. Michelle Gessner, NCSB#26590
GESSNER LAW, PLLC
602 East Morehead
G. G. Galloway House
Charlotte, North Carolina 28202
Tel: (704) 234-7442
Fax: (980) 206-0286
Email: michelle@mgessnerlaw.com