UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:23-cv-352-MOC-SCR

| | |
|---|---|
| NATALIE FERRETTI, <br><br> Plaintiff, <br><br> v. <br><br> TRUIST FINANCIAL CORPORATION, <br><br> Defendant. | ORDER |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendant Truist Financial Corporation ("Truist" or "Defendant"). (Doc. No. 17).

## I. BACKGROUND

### A. Procedural Background

Plaintiff Natalie Ferretti ("Plaintiff") filed this action in this Court on June 13, 2023. (Doc. No. 1). Plaintiff filed an Amended Complaint on November 13, 2023. (Doc. No. 12). In the Amended Complaint, Plaintiff asserts three causes of action against Defendant: (1) interference with her rights under the Family and Medical Leave Act ("FMLA"); (2) sex discrimination and pregnancy discrimination in violation of Title VII of the Civil Rights Act; and (3) wrongful discharge in violation of North Carolina public policy.

On July 24, 2024, Defendant filed a motion for summary judgment. (Doc. No. 17). Plaintiff filed a response on August 28, 2024, (Doc. No. 22), and Defendant filed a reply on September 10, 2024. (Doc. No. 27). The Court held a hearing on October 22, 2024. The matter is now ripe for disposition.

1

### B. Factual Background

Plaintiff began working for Branch Banking & Trust ("Branch") in 2011.[1] (Pl. Dep. 16:15–17). When Branch and SunTrust Bank merged in 2019, creating Truist, Plaintiff remained employed, now for Truist. (Cascio Dep. ¶ 1). Plaintiff held several different positions throughout her time working for Branch and Truist—from the time of the merger until her termination in March 2023, Plaintiff's job title was "Advice & Planning Strategic Consultant III." (Pl. Dep. 69:18–21). There were five other employees at Trust who had an identical job title, job description, and pay grade to Plaintiff.

Before her most recent pregnancy, Plaintiff had three children. She took maternity leave from her employment with Defendant during each of the first three pregnancies. (Pl. Dep. 12:13–13:7). Plaintiff complained to HR about discrimination shortly after one of her maternity leave periods and testified that she believed she was retaliated against as a result of the complaint. (Id. at 26, 35–38). Her fourth maternity leave would have been different from the prior three because it would have been longer (five months) and paid at 100% of her salary. (Id. at 82:12–21).

In June 2022, Plaintiff told her supervisor, Kristin Beard ("Beard") and former supervisor, Helene Moll ("Moll") that she had a miscarriage. (Id. at 102–04). Cascio, who ultimately made the decision to fire Plaintiff, testified that he did not remember whether he was told about the miscarriage. (Cascio Dep. 264).

Plaintiff informed Defendant that she was pregnant on February 6, 2023, 15 days before she was fired. (Pl. Dep. 109). She applied for FMLA leave the same day. (Id.). Before that,

---

[1] Since the Court finds that Plaintiff's claims survive summary judgment, it will not include all the testimony and evidence emphasized by each party—suffice it to say, the parties disagree about the credibility and implications of much of the evidence. Because at this stage the facts must be assessed in the light most favorable to Plaintiff, the Court will tend to focus on Plaintiff's version of events in this section.

Cascio and Plaintiff met in person in a meeting on January 31, 2023. (Id. at 117). Plaintiff testified that she "looked pregnant" at the meeting, that other teammates noticed that she was, and that Cascio sat across from her. (Id. at 118–19, 123).

When Defendant made a final decision to terminate plaintiff is disputed. According to Defendant, Cascio began planning to eliminate a position or positions in November 2022, and each possible scenario included Plaintiff's termination. (Cascio Dep. 37). However, Cascio acknowledges that no final decisions could be made without the Reduction in Force ("RIF") process required by HR. (Id. at 58). Additional changes were made to the language related to Plaintiff's termination on January 31, 2023, after the meeting where Cascio and Plaintiff met in person. (Id. at 185). Cascio testified that he decided to fire Plaintiff after he received notification from HR that the process was complete, which was in early February 2023. (Id. at 67).

Cascio acknowledged that Defendant's RIF procedures require a pool of candidates. (Id. at 49:4–7). However, he also admitted that he had decided who he wanted to terminate before the RIF, and that Plaintiff was selected from a "pool of one." (Id. at 52:15–17, 79:9).

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The party seeking summary judgment has the initial burden of demonstrating that there is

3

no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Id. at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. Id. Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. Anderson, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. Further, Rule 56 provides, in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, the non-movant must show the existence of a factual dispute on every essential element of his claim.

### III. DISCUSSION

To establish an FMLA interference claim a plaintiff must show that: (1) she is entitled to an FMLA benefit; (2) her employer interfered with the provision of that benefit; and (3) that

4

interference caused harm. Adams v. Anne Arundel Cnty. Pub. Sch., 789 F.3d 422, 427 (4th Cir. 2015).

Here, Plaintiff requested FMLA leave on February 6, 2023, 15 days before she was fired. There is a genuine issue of fact as to when the final decision to terminate Plaintiff was made. A reasonable finder of fact could determine that the final decision was made after her request for FMLA leave, and therefore Defendant interfered with her entitlement to a benefit.[2]

Plaintiff has also established a prima facie claim of pregnancy and/or sex discrimination. There are genuine issues of fact that, when assessed in the light most favorable to Plaintiff, support an inference of discrimination. The fact that Cascio made changes to the RIF immediately after seeing Plaintiff while she was pregnant, the temporal proximity between that event and her termination, and the circumstances and reasoning behind the RIF all could support such an inference.[3]

In sum, the Court finds that Plaintiff has raised genuine issues of fact with respect to her FMLA, Title VII, and wrongful discharge claims. Defendant's motion for summary judgment will therefore be denied.

## IV. CONCLUSION

For the reasons above, the Court denies Defendant's summary judgment motion.

---

[2] The FMLA retaliation claim survives for the same reason. Retaliation could also be found based on Defendant's failure to try to find Plaintiff a new position instead of terminating her.
[3] Defendant argues that the state law wrongful discharge claims should fall with the Title VII claims but does not make any separate arguments for their dismissal. Therefore, those claims will also survive.

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Motion for Summary Judgment, (Doc. No. 17), is **DENIED**. Plaintiff's claims shall proceed to trial.

Signed: December 30, 2024

Max O. Cogburn Jr.
United States District Judge